# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

MELONIE M. MAYES-TYLER, )
          Plaintiff, )
v. )   Case No. CIV-18-00681-PRW
GEICO GENERAL INSURANCE )
COMPANY, )
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Defendant, GEICO General Insurance Company (hereinafter "GEICO") has filed a Motion for Partial Summary Judgment (Dkt. 22) pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Plaintiff, Melonie M. Mayes-Tyler, filed a Response (Dkt. 27) on May 6, 2019. GEICO's Reply (Dkt. 30) was filed May 8, 2019. Upon review of the parties' filings, the Court **DENIES** Defendant's Motion for Partial Summary Judgment (Dkt. 22) as set forth more fully below.

### *Burden of Proof*

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines

only whether there is a genuine dispute for trial before the fact-finder(s).[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely dispute and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[5] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts,"[6] or by

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[4] *Id.*

[5] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[6] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

theorizing a "plausible scenario" in support of its claims.[7] "Rather, 'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[8] If there is a genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[9]

## *Undisputed Material Facts*

Included here are those material facts supported by the record and not genuinely disputed in the manner required by Rule 56(c). These facts are now established in the case pursuant to Rule 56(g).

On August 29, 2015, non-party Jared Hill turned his truck left at the intersection of Southwest Boulevard and W. 17th Street in Tulsa, Oklahoma, thereby placing his truck in the path of an oncoming sedan occupied by non-party Jermel Tyler (the driver) and Plaintiff Melonie Mayes-Tyler (a passenger) and causing a collision. Plaintiff sustained injuries to her neck, back, left and right shoulder, right wrist, left and right knees, and ankle as a result. During the ensuing seventeen months—i.e., from August 2015 to January 2017—Plaintiff received medical treatment from various providers, including arthroscopic surgery to repair

---

[7] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[8] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[9] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

a partial tear to the rotator cuff in her left shoulder. The Plaintiff's medical expenses related to this collision total $50,649.13.

At the time of the wreck, Mr. Hill was insured under an automobile liability insurance policy issued by Defendant GEICO that had policy limits of $100,000 per person/$300,000 per occurrence.[10] Also at the time of the wreck, Plaintiff was insured under an automobile UM/UIM insurance policy, No. 0761-50-87-04, issued by Defendant GEICO that had policy limits of $50,000 per person/$100,000 per occurrence.[11]

---

[10] In the "Factual Background" portion of its brief, GEICO states that Mr. Hill's liability policy "provided limits of $100,000/$300,000"; but in the "Statement of Material, Undisputed Facts" portion of its brief, GEICO states that Mr. Hill's liability policy "provided liability limits of $50,000/$100,000." *Compare* GEICO's Mot. Partial Summ. J. (Dkt. 22) at 2, *with id.* ¶ 2, at 3. As evidentiary support for the allegedly undisputed fact that Mr. Hill's liability limits were $50,000/$100,000, GEICO cites generally to the parties Joint Status Report (Dkt. 12). *See* GEICO's Mot. Partial Summ. J. (Dkt. 22) ¶ 2, at 3. The parties' Joint Status Report only states that "[t]he tortfeasor, Jared Hill, had liability limits of $100,000" and that, "[e]ventually, GEICO agreed to pay its $100,000 liability limits." Jt. Status Report (Dkt. 12) at 1. Upon review of the documentary evidence presented by the parties, it appears undisputed that Mr. Hill's liability limits were $100,000 per person/$300,000 per occurrence. *See, e.g.*, Grieco Aff. (Dkt. 22-2) ¶¶ 3–4, at 3, Apr. 8, 2019 (discussing the tortfeasor's "$100,000 limits"); Letter from Matt A. Melone, Melone & Melone, P.C., to Chris Schools, GEICO Region V Claims, (Dkt. 22-7) at 2 (Mar. 3, 2017) (Bates No. GEICO-MT 0347) ("Geico has verbally disclosed Liability policy limits of $100,000.00 . . . ."); Letter from Tamara Burch, GEICO Region V Claims, to Melone & Melone (Dkt. 22-8) at 4 (Mar. 22, 2017) (Bates No. GEICO-MT 0574) ("The other party involved who also has GEICO confirmed they have at least a $100,000 policy."); Kat Herron's Review (Dkt. 22-9) at 3 (May 16, 2017) (Bates No. GEICO-MT 0072) ("Tortfeasor limits: $100,000/300,000"); Amy Grieco's OK UM/UIM Evaluation (Dkt. 22-10) at 7 (June 4, 2018) (Bates No. GEICO-MT 1119) ("Tortfeasors Limits: 100,000"); Letter from Rex Travis, Travis Law Office, to Amy Grieco, GEICO Direct, (Dkt. 27-9) at 1 (May 21, 2018) ("Your liability side of the house in this case has offered its limits of $100,000.00.").

[11] A similar discrepancy regarding the amount of Plaintiff's UM/UIM policy limits appears in GEICO's brief. In the "Factual Background" portion of its brief, GEICO states that "[h]er GEICO policy provided UM/UIM benefits with limits of $25,000/$50,000"; but in the "Statement of Material, Undisputed Facts" portion of its brief, GEICO states that her

4

Plaintiff made claims against both Mr. Hill's liability policy and her own UM/UIM policy within days after the wreck. Plaintiff's liability claim was handled by at least two GEICO adjusters, Chris Schools and Teresa Euziere; and her UIM claim was handled by at least three GEICO adjusters, Tamara Burch, Kat Herron, and Amy Grieco. GEICO admitted that Mr. Hill was liable for Plaintiff's loss as early as September 4, 2015.[12] After Plaintiff's doctors released her from treatment in January 2017, her first attorney submitted a settlement demand to GEICO on March 3, 2017, seeking liability policy limits of $100,000 and UIM policy limits of $50,000.[13] On March 20, 2017, Mr. Schools offered to settle Plaintiff's liability claim for $74,424.13.[14] Two days later, Ms. Burch denied Plaintiff's UIM claim because "there d[id] not appear to be UIM exposure at th[at] time"

---

UM/UIM policy "provided limits of $50,000/$100,000." *Compare* GEICO's Mot. Partial Summ. J. (Dkt. 22) at 2, *with id.* ¶ 3, at 3. Again, looking at the documentary evidence presented by the parties, it is apparent that Plaintiff's UM/UIM limits were $50,000 per person/$100,000 per occurrence. *See, e.g.*, Letter from Melone to Schools (Dkt. 22-7), *supra* note 10, at 2 (Bates No. GEICO-MT 0347) ("Geico has verbally disclosed . . . UM policy limits of $50,000.00."); Letter from Tamara Burch, GEICO Region V Claims, to Melone & Melone (Dkt. 22-8) at 2 (Aug. 16, 2016) (Bates No. GEICO-MT 0345) ("Mrs. Mayes-Tyler has underinsured motorist coverage of $50,000 per person not to exceed $100,000 per claim."); Kat Herron's Review (Dkt. 22-9), *supra* note 10, at 3 (Bates No. GEICO-MT 0072) ("UM/UIM: $50,000/100,000"). *But see* UM/UIM Claim Notes (Dkt. 22-1) at 18 (Sept. 4, 2015, 04:04 PM) ("[A]dvised UIM 25/20.").

[12] UM/UIM Claim Notes (Dkt. 22-1) at 19 (Sept. 4, 2015, 03:54 PM) ("Spoke with h[andling ]a[djuster] on other claim – 044819841010 . . . [i.e., the claim against Hill's liability policy]. [L]iab[ility] has been accepted. [T]here is no dispute.").

[13] Letter from Melone to Schools (Dkt. 22-7), *supra* note 10, at 2, 20 (Bates Nos. GEICO-MT 0347, 0366).

[14] Letter from Chris Schools, GEICO Region V Claims, to Melone & Melone (Dkt. 27-1) at 1 (Mar. 20, 2017).

in light of the tortfeasor's liability limits and the injuries disclosed in the settlement demand package.[15] Plaintiff then hired her current counsel.

Plaintiff's new counsel continued to pursue a policy-limits settlement on the liability claims. On May 15, 2017, Plaintiff filed suit against Mr. Hill in the District Court of Tulsa County, alleging that Mr. Hill's negligence had caused the wreck and her injuries.[16] Despite GEICO's prior admission of Hill's liability for purposes of the claim,[17] the attorneys hired by GEICO to defend Mr. Hill filed an answer denying that Mr. Hill was negligent and alleging the affirmative defense of contributory negligence against Plaintiff.[18] On May 18, 2018, GEICO offered to settle the lawsuit against Mr. Hill for policy limits of $100,000 contingent upon waiver of UIM's subrogation rights.[19]

Plaintiff's new counsel also requested a second review of the UIM claim by the newly assigned adjuster, Kat Herron. On May 16, 2017, Ms. Herron conducted a review of the UIM claim. The document generated as a result of Ms. Herron's evaluation reflects that Plaintiff's total medical expenses were valued at $50,649.13, that her past and future pain and suffering were valued at $50,649.13, and that the settlement range was estimated

---

[15] Letter from Burch to Melone & Melone (Dkt. 22-8), *supra* note 10, at 4 (Bates No. GEICO-MT 0574).

[16] Pet. (Dkt. 27-3) at 1, *Mayes-Tyler v. Hill*, No. CJ-2017-1873 (Okla. Dist. Ct., Tulsa Cty. filed May 15, 2017).

[17] *See supra* note 12 and accompanying text.

[18] Answer (Dkt. 27-4) at 1, *Mayes-Tyler v. Hill*, No. CJ-2017-1873 (Okla. Dist. Ct., Tulsa Cty. filed Aug. 8, 2017).

[19] E-mail from Robert E. Black, Miller & Johnson, PLLC, to Rex Travis, Travis Law Office, (Dkt. 27-9) at 2 (May 18, 2018, 3:23 PM).

between $77,649.13 and $95,649.13.[20] Currently, the record is void of any follow-up communication that Ms. Herron had with Plaintiff or her attorneys. In February 2018, Plaintiff's UIM claim was reassigned to a new adjuster, Amy Grieco. Following receipt of the settlement offer for Mr. Hill's policy limits on May 18, 2018, Plaintiff's counsel advised Ms. Grieco about the settlement, asked her either to waive UIM's subrogation rights to the $1000,000 or to substitute payment, and demanded that she tender the UIM policy limits of $50,000.[21] Upon evaluating the Plaintiff's UIM claim, Ms. Grieco generated a document reflecting that Plaintiff's total medical expenses were valued at $50,649.13, that her past and future pain and suffering were valued between $25,000 and $40,000, and that the settlement range was therefore estimated between $76,649.13 and $93,149.13.[22] Although GEICO's brief states that Ms. "Grieco noted in her file that she would send a letter to Plaintiff's counsel and waive subro,"[23] the record is currently void of any evidence in support of this contention.

On June 26, 2018, Plaintiff filed suit against GEICO in the District Court of Oklahoma County, alleging that GEICO had breached the terms of the UM/UIM policy and had violated its duty to deal fairly and in good faith with its insured by failing to pay any benefits.[24] That same day, Ms. Grieco's claim notes reflect that she "[d]iscussed [the]

---

[20] Kat Herron's Review (Dkt. 22-9), *supra* note 10, at 3 (Bates No. GEICO-MT 0072).
[21] Letter from Travis to Grieco (Dkt. 27-9), *supra* note 10, at 1.
[22] Amy Grieco's OK UM/UIM Evaluation (Dkt. 22-10), *supra* note 10, at 2, 7 (Bates Nos. GEICO-MT 1114, 1119)
[23] GEICO's Mot. Partial Summ. J. (Dkt. 22) at 2.
[24] Pet. (Dkt. 22-11) ¶ 4, at 2.

file with adv[iso]rs – they had the claim eval[uate]d around [$]86k and after the depos, they made a business decision to tender their limits."[25] In an affidavit submitted with GEICO's brief, Ms. Grieco identifies Teresa Euziere, GEICO's adjuster who handled Plaintiff's claim against Mr. Hill's liability policy, as an advisor whom she consulted on June 26th.[26] On July 16, 2018, GEICO removed the suit.[27] Plaintiff has alleged the following acts that she believes constitute bad faith on the part of GEICO: (1) GEICO attempted to settle Plaintiff's liability claim for a "low ball" amount to avoid making a payment on Plaintiff's UIM claim; (2) GEICO failed to conduct a reasonable investigation and evaluation of Plaintiff's UIM claim; and (3) GEICO has failed to pay any UIM benefits to Plaintiff, even after she received a policy-limits settlement from the tortfeasor.[28]

*Analysis*

GEICO has filed a Motion for Partial Summary Judgment, arguing that the undisputed facts establish that GEICO acted reasonably during its investigation and evaluation of Plaintiff's UIM claim,[29] that a legitimate dispute exists as to the value of Plaintiff's injury claim,[30] and that "GEICO did not owe a duty of good faith to Plaintiff under Hill's liability policy; Geico [sic] only owed a duty of good faith to its insured, Hill,

---

[25] UM/UIM Claim Notes (Dkt. 22-1) at 2–3 (June 26, 2018, 10:02 AM).

[26] Grieco Aff. (Dkt. 22-2), *supra* note 10, ¶ 4, at 3.

[27] Notice of Removal (Dkt. 1) at 1.

[28] GEICO's Mot. Partial Summ. J. (Dkt. 22) ¶ 20, at 7–8 (quoting Pl.'s Resps. to Interrogs. # 3–5 (Dkt. 22-12)); Pl.'s Resp. (Dkt. 27) ¶ 20, at 5.

[29] *Id.* at 1, 15.

[30] *Id.* at 1, 10, 12.

*in connection with Plaintiff's liability claim against Hill.*"[31] In light of these arguments, GEICO asks the Court to enter judgment as a matter of law in its favor on Plaintiff's bad faith claim.

The Court will address GEICO's last contention first. This argument appears to present a purely legal question, of the type that would typically be addressed through a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. The issue is whether Plaintiff's bad faith claim may be based, at least in part, upon GEICO's handling of Plaintiff's liability claim.

Ordinarily, Plaintiff could not assert a claim of bad faith against someone else's automobile liability insurer because there would be no contractual relationship between Plaintiff and the liability insurer, and thus no basis for finding a duty to deal fairly and act in good faith.[32] But here both Plaintiff's UIM insurer and the tortfeasor's insurer are the same company; so the question is whether that alters the general rule.

As GEICO points out, this issue has come before the Oklahoma Supreme Court once before. In the case of *Garnett v. Government Employees Insurance Co.*, 2008 OK 43, 186 P.3d 935, that court stated:

---

[31] *Id.* at 13 (citing *Newport v. USAA*, 2000 OK 59, ¶ 15, 11 P.3d 190, 196); *cf. id.* at 14 (citing *Garnett v. Gov't Emps. Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944–45, and arguing "Plaintiff has shown nothing more than the potential for a conflict of interest created by the coincidence that GEICO happened to insure both Hill and Plaintiff," which would seem to imply that GEICO may owe a duty of good faith and fair dealing in how it handled the Plaintiff's claim under Hill's liability policy).

[32] *Newport*, 2000 OK 59, ¶ 15, 11 P.3d at 196 ("An insurer may not treat its own insured in the manner in which an insurer may treat third-party claimants to whom no duty of good faith and fair dealing is owed.").

> As part of his bad faith claim, the passenger also alleges that the insurer engaged in "dual representation"—that the insurer's employee working the UIM claim and the insurer's employee working the liability claim conferred and colluded, thus preventing either from reaching a fair estimate of the value of the passenger's claims. The insurer responds that there was no showing that the adjusters acted in bad faith.
>
> The duty of an insurer who insures both parties in an accident has rarely been specifically addressed in federal or state jurisprudence, and is an issue of first impression in this Court. We have consistently held that in order to establish a bad faith claim, a party must show that the insurer engaged in unreasonable, bad faith conduct. This principle may be seen underlying examples of bad faith conduct by insurers who insure both parties to an accident found in other decision of other courts. These include: 1) using delay in settling one claim to force unfair settlement of the other; 2) making knowing misrepresentations to force an insured to accept an unfair settlement; 3) failing to disclose the nature of its relationship to each party; 4) using conflicting defenses against each party; and 5) using a single adjustor for both claims, who makes fraudulent misrepresentations to both parties.[33]

The state court thus didn't rule out the possibility of bad faith altogether, but rather found in that particular case that the plaintiff "ha[d] shown nothing more than the potential for a conflict of interest created by the coincidence that the insurer happened to insure both" the tortfeasor and the plaintiff.[34] Even after noting that the plaintiff "ma[de] much of the fact that the examiners communicated," the court found such evidence unconvincing because

---

[33] *Garnett*, 2008 OK 43, ¶¶ 24–25, 186 P.3d at 944–45 (footnotes omitted) (citing the following cases from other jurisdictions: *State Farm Mut. Auto. Ins. Co. v. Ling*, 348 So. 2d 472, 475 (Ala. 1977); *McCarter v. State Farm Mut. Auto. Ins. Co.*, 473 N.E.2d 1015, 1019 (Ill. App. Ct. 1985); *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 188 (Ky. Ct. App. 2003); *Colton v. Hartford Fire Ins. Co.*, 135 So. 2d 489, 490 (La. Ct. App. 1961); *Himler v. Hezel*, 492 S.W.2d 395, 396 (Mo. Ct. App. 1973); *Lee v. Killian*, 761 S.W.2d 139, 141 (Tex. App. 1988); *Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 825 (Wyo. 1991)).

[34] *Id.* ¶ 27, 186 P.3d at 945.

"the major reason for any communication between the examiners was that the [plaintiff] often submitted claim information to the wrong examiner or under the wrong claim number."[35]

Thus, it appears that the liability adjuster's actions may, as a matter of state law, have some bearing on the issue of bad faith. Consequently, the Court cannot say that Plaintiff has failed to state a claim insofar as she alleges that GEICO acted in bad faith when it attempted to settle her liability claim for a "low ball" amount to avoid making a payment on her UIM claim.

But GEICO also argues that Plaintiff has made no showing that GEICO's liability and UM adjusters acted in bad faith. GEICO invokes the examples of "dual representation" discussed by the *Garnett* court and argues that "GEICO did not use 'dual representation' to force Plaintiff to accept an unfair settlement."[36] At this juncture, however, this case appears to be distinguishable from the *Garnett* case. In *Garnett*, the court was dismissive of the plaintiff's contention that the liability and UM adjusters had communicated with each other because the plaintiff's actions had forced them to do so. Here, the limited record before the Court shows that the two adjusters first conversed on September 4, 2015,[37] that the two adjusters utilized a "share letter" to share materials between the two claims,[38] and that the UIM adjuster was consulting the liability adjuster as an advisor for purposes of

---

[35] *Id.*

[36] GEICO's Mot. Partial Summ. J. (Dkt. 22) at 14.

[37] UM/UIM Claim Notes (Dkt. 22-1) at 19 (Sept. 4, 2015, 03:54 PM).

[38] *Id.* at 18 (Sept. 4, 2015, 04:04 PM).

deciding whether to continue to withhold payment of UIM benefits after Plaintiff filed this lawsuit in state court.[39] This evidence may give rise to different inferences regarding the reasonableness of GEICO's conduct; for instance, one juror might look at this evidence and find that the communication taking place in each instance was reasonable, while another juror might find that these communications demonstrate a conflict of interest—or even collusion—that explains why GEICO initially attempted to settle the liability claim at $74,424.13 despite an evaluation at $86,000 and an eventual settlement at policy limits of $100,000. "What is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."[40] Consequently, the issue of whether GEICO's conduct vis-à-vis the handling of Plaintiff's liability claim was reasonable is genuinely disputed and must be resolved by a jury, such that partial summary adjudication must be denied.

The same can be said with respect to GEICO's first contention that it acted reasonably during its investigation and evaluation of Plaintiff's UIM claim. In looking for a genuine dispute over a material fact, the Court need not look further than Defendant's Material, Undisputed Fact No. 15. The undisputed facts from the limited record before the Court demonstrate that GEICO's UIM adjuster, Kat Herron, valued Plaintiff's total medical expenses at $50,649.13, valued Plaintiff's past and future pain and suffering at $50,649.13,

---

[39] *Id.* at 2 (June 26, 2018, 10:02 AM).

[40] *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1093 (quoting *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶ 21, 673 P.2d 583, 587).

and then landed on a settlement range between $77,649.13 and $95,649.13.[41] GEICO attempts to explain in a footnote the discrepancy between total damages of $101,298.26 and the proffered settlement range by stating that Ms. Herron's valuation of pain and suffering at an amount equal to the medical expenses was a "mistake" that was "inadvertent[]" and that Ms. Herron "intended to identify the range of general damages at $27,000 to $45,000."[42] That is certainly one inference that can be made from the undisputed evidence, particularly when there is no evidence cited in support of such an explanation.[43] But as Plaintiff's Response (Dkt. 27) points out, "[e]ven if that contention is among the inferences to be drawn from Grieco's [sic] 'evaluation,' it certainly does not foreclose the much more reasonable inference that Grieco [sic] meant what she said and her evaluation of Plaintiff's claim exceeded GEICO's policy limits for Hill."[44] "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be

---

[41] *See supra* note 19 and accompanying text.

[42] GEICO's Mot. Partial Summ. J. (Dkt. 22) ¶ 15 n.1, at 6.

[43] Even if GEICO had produced an affidavit from Ms. Herron setting forth such an explanation, the issue would still present a genuine dispute over a material fact. A jury would still be needed to assess the credibility of Ms. Herron and to weigh the competing evidence presented by her written evaluation and her testimonial explanation of the discrepancy appearing therein.

[44] Pl.'s Resp. (Dkt. 27) at 14. It is clear from the record that Plaintiff's references here to Ms. Grieco are mistaken and should be references to Ms. Herron. *See, e.g.*, *id.* ¶ 15, at 4–5 (discussing "Herron's discrepancy" in her evaluation dated May 16, 2017; arguing that "Herron concedes that she had assigned an equal value to Plaintiff's medical bills and to her claim for past and future pain and suffering" that would "total $101,298.26"; and further arguing that "[w]hether Herron meant that or not is clearly a disputed factual question").

determined by the trier of fact by a consideration of the circumstances in each case."[45] Consequently, the issue of whether GEICO's investigation and evaluation of Plaintiff's UIM claim was reasonable is genuinely disputed, such that partial summary adjudication must be denied.

All that is left is GEICO's second contention that a legitimate dispute exists as to the value of Plaintiff's injury claim that would preclude a finding of bad faith. The "legitimate dispute" language being invoked by GEICO comes from the following general rule for bad faith cases: "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim."[46] "The fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is 'legitimate.'"[47] Although that may generally be true, "a jury may decide the issue of bad faith, even when the evidence reveals a legitimate possible basis for a dispute, if the claimant submitted evidence that the insurer did not *actually* rely on that legitimate basis but rather denied the claim for an illegitimate reason, such as a systematic bad faith scheme of canceling policies without . . . good

---

[45] *Badillo*, 2005 OK 48, ¶ 28, 121 P.3d at 1093 (quoting *McCorkle*, 1981 OK 128, ¶ 21, 673 P.2d at 587).

[46] *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (quoting *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989); *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 12, 681 P.2d 760, 762).

[47] *Id.* at 1442 (citing *Manis*, 1984 OK 25, ¶ 12, 681 P.2d at 762)

cause."[48] Here, GEICO has presented evidence that could show numerous adjusters reached the same conclusion that Plaintiff's damages amounted to less than $100,000 and that the ultimate settlement of her liability claim for $100,000 policy limits was a "business decision" that does not bear on the actual value of her claim. At the same time, however, Plaintiff has submitted evidence that could show GEICO actually valued her damages at $101,298.26, which in turn demonstrates that GEICO "did not actually rely on" the other valuations below $100,000. Moreover, Plaintiff has submitted evidence that might show GEICO was involved in "dual representation" in its adjustment of Plaintiff's liability claim and UIM claim, all in an effort to force unfair settlement of her liability claim by delaying settlement of her UIM claim. These competing theories of the case demonstrate why summary judgment is inappropriate and why a jury is needed to weigh the evidence in this case. Consequently, GEICO's third contention serves as no basis for entering partial summary adjudication.

IT IS THEREFORE ORDERED that Defendant GEICO General Insurance Company's Motion for Partial Summary Adjudication (Dkt. 22) is hereby **DENIED**. This case remains on the Court's November 2019 civil trial docket.

---

[48] *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012) (citing *Vining v. Enter. Fin. Grp., Inc.,* 148 F.3d 1206, 1214 (10th Cir. 1998); *Capstick v. Allstate Ins. Co.,* 998 F.2d 810, 814–15 (10th Cir. 1993)).

**IT IS SO ORDERED this 28th day of October, 2019.**

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE